Lewis ORGEL and The Michie Company.
Plaintiffs-Appellees,

v.

CLARK BOARDMAN CO., Ltd., and
Alfred D. Jahr, Defendants-
Appellants.

No. 120, Docket 26818.

United States Court of Appeals
Second Circuit.

Argued Dec. 5, 1961.

Decided March 27, 1962.

Philip Wittenberg, New York City
(Lemuel Bannister, Jr., and Wittenberg,
Carrington & Farnsworth, New York
City, on the brief), for defendants-appel-
lants.

James E. Birdsall, New York City
(Warner, Birdsall & Anfuso, New York
City, on the brief), for plaintiffs-appel-
lees.

Before WATERMAN, SMITH and
MARSHALL, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

This is an appeal by the defendants from a judgment for the plaintiffs in the District Court for the Southern District of New York tried to the court without a jury, Edward J. Dimock, D. J., in a suit for damages and injunction for copyright infringement brought pursuant to the Copyright Act, 17 U.S.C. §§ 1 et seq., 101.

On March 30, 1960 an interlocutory judgment in favor of the plaintiffs, finding infringement, was rendered and the issue of damages and counsel fees referred to Newman Levy, Esq., a Special Master. A report was filed July 14, 1960 by the Special Master awarding to the plaintiffs thirty-five percent (35%) of the profits earned by the defendants, amounting to $4,497.27, plus an additional sum of $7,000 based on the damages of the plaintiffs having exceeded by this amount the profits recovered, together with counsel fees of $10,000.

Judge Dimock on the motion to confirm the report held that the Master had improperly made an allocation of profits as no evidence had been offered to show that any portion of the profit was due to that part of the book not appropriated from Orgel. Plaintiffs were therefore allowed the full amount of the profits earned by the defendants, $12,849.32, and the Master's additional award of $7,000 was stricken. The district court also confirmed the award of counsel fees, $10,000, and allowed $1,250 for the Master thereby making the total costs $2,176.40, and granted the usual injunctive relief. We modify the monetary judgment to reduce the award to 50% of the profits, $5,000 counsel fee, and costs, and as modified affirm the judgment.

■ We agree with the conclusion of the district court that:

"When the books are read together in continuity the content is so simi-lar in arrangement, in the language and in substance that the conclusion is inescapable that the individual defendant took advantage of his access to the individual's plaintiff's [sic] book in the compilation of the part of his work which dealt with valuation." Opinion of Dimock, D. J., S.D.N.Y., March 30, 1960.

Although Jahr has in some instances brought Orgel up to date, for instance he included United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945), and has added or substituted in a number of places recent New York condemnation cases, it appears to this court that the essence of Orgel was "lifted" by Jahr, and while he did not confine himself entirely to Orgel he did adopt as his own, Orgel's analysis, organization of material, phrasing and citations without any credit to Orgel as to most of the portions appropriated.

■ While any two books treating the same subject, particularly in the field of law where words and phrases are often terms of art, and based upon common sources are bound to contain a large measure of innocent similarity [1] we think the portion of Jahr's book dealing with valuation is so strikingly similar to plaintiff Orgel's work that even the most undiscriminating reader would be forced to conclude that defendant Jahr did little more than edit and bring up to date plaintiff Orgel's work. Defendant's book is merely a "colorable variation," Edward Thompson Co. v. American Law Book Co., 122 F. 922, 923, 62 L.R.A. 607 (2 Cir. 1903), of Orgel's. Appropriation of the fruits of another's labor and skill in order to publish a rival work without the expenditure of the time and effort required for independently arrived at results is copyright infringement.[2]

Appellants attack the decision of the court below, claiming the award of all de-

1. See Chautauqua School of Nursing v. National School of Nursing, 238 F. 151 (2 Cir. 1916); Edward Thompson Co. v. American Law Book Co., 122 F. 922, 62 L.R.A. 607 (2 Cir. 1903); Greenbie v. Noble, 151 F.Supp. 45, 67 (S.D.N.Y.

1957); Ball, Law of Copyright and Literary Property, 308.

2. West Publishing Co. v. Edward Thompson Co., 176 F. 833, 838 (2 Cir. 1910); 34 Am.Jur. Literary Property and Copyright § 67.

fendants' profits to the plaintiffs was contrary to law as it was conceded that only thirty-five per cent of Jahr's book dealt with the law of valuation of eminent domain and no claim was made that the remaining sixty-five percent was connected with Orgel's book.

While we appreciate the fact that defendants have failed to show with any certainty the portion of the sales attributable to the plagiarized portion we cannot agree with the conclusion of the district court that therefore all of the profits should be awarded to the plaintiffs.

■ In cases such as this where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment.

"We are aware that out of all this no real standard emerges, and that it would be absurd to treat the estimates of the experts as being more than expressions of very decided opinions that the play should count for very little. But we are resolved to avoid the one certainly unjust course of giving [to] the plaintiffs everything, because the defendants cannot with certainty compute their own share. In cases where plaintiffs fail to prove their damages exactly, we often make the best estimate we can, even though it is really no more than a guess (Pieczonka v. Pullman Co., 2 Cir., 102 F.2d 432, 434), and under the guise of resolving all doubts against the defendants we will not deny the one fact that stands undoubted. Procedural duties are devised in aid of truth; and their unsparing use may defeat their whole purpose, as here it would. However, though we do not press the burden of proof so far, the defendants must be content to accept much of the embarrassment resulting from mingling the plaintiffs' property with their own. We will

not accept the experts' testimony at its face value; we must make an award which by no possibility shall be too small. It is not our best guess that must prevail, but a figure [that] will favor the plaintiffs in every reasonable chance of error." Sheldon v. Metro-Goldwyn Pictures Corp., 106 F.2d 45, 51 (2 Cir. 1939) (Learned Hand, J.), affirmed 309 U. S. 390, 60 S.Ct. 681, 84 L.Ed. 825 (1940). Contra, Sammons v. Larkin, 38 F.Supp. 649 (D.Mass.1940).

Belford, Clarke & Co. v. Scribner, 144 U.S. 488, 12 S.Ct. 734, 36 L.Ed. 514 (1892) and Callaghan v. Myers, 128 U.S. 617, 9 S.Ct. 177, 32 L.Ed. 547 (1888) have been narrowly limited and have no application "where it is clear that all the profits are not due to the use of the copyrighted material, and the evidence is sufficient to provide a fair basis of division," Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 402, 60 S.Ct. 681, 84 L.Ed. 825 (1940). Alfred Bell & Co. v. Catalda Fine Arts, 86 F.Supp. 399 (S. D.N.Y.1949), affirmed 191 F.2d 99 (2 Cir. 1951), is another case where no division was feasible as the entire product was the result of unlawful appropriation.

■ In the instant case the plagiarized material appeared only in the section on Valuation, which comprises thirty-five percent of Jahr's work. The very existence of the remaining sixty-five percent in the infringing work is convincing evidence that some part of the commercial value of the whole is attributable thereto. We are not persuaded that the principle of apportionment, announced in Sheldon, must be limited to cases in which experts have testified with respect to the relative contributions of the plagiarized and original portions. Although the testimony of experts is often helpful it is at best little more than an educated guess, and not of such compelling force that it is an essential element in every case.

■ In arriving at a figure every indulgence should be granted plaintiff in an attempt to arrive at a sum which is as-

suredly adequate. However, a lump sum addition such as that adopted by the Special Master is not the proper approach to the case at bar.

No method will give mathematical accuracy, but in dealing with material such as we have here, designed primarily for use by bench and bar in legal contest, a reasonable estimate of the relative contribution of the plagiarized material may be made on the record before us.

■■■ Since valuation is the single most important issue in the bulk of condemnation litigation, we feel that it is reasonable to allocate 50% of the profits to the infringing material, although that makes up but approximately 35% of the defendants' complete work. The treatment of the nature and exercise of the power of eminent domain, parties, pleadings, jurisdiction and venue, methods of trial and review, and the sample forms provided, while useful and in some cases important are, after all, ancillary to the central issue in the vast majority of condemnation actions, that of valuation. Jahr, however, did undoubtedly perform a useful service in bringing these subjects together and treating them in one volume. We think the practitioners in this field would find the balance of the work needed and useful in approximately the same degree as the single most important portion, that on valuation derived from Orgel. This establishes the award at $6,424.66. Costs, including the Master's fee, were properly allowed. 17 U.S. C. § 116. Edward B. Marks Music Corp. v. Foullon, 171 F.2d 905 (2 Cir. 1949). Copyright Law Revision Studies prepared for the Subcommittee on Patents, Trademarks, and Copyrights of the Senate Committee on the Judiciary, pursuant to S. Res. 240, Eighty-sixth Congress, Second Session, pp. 29, 30. The award of attorney's fees is discretionary with the court under the act. Ibid, p. 31. Since such a provision for attorney's fees is at variance with the usual practice in litigation before our courts, however, it has been sparingly used and the amounts awarded modest. Ibid. pp. 85, 91, Table B. Fee Awards to Prevailing Plaintiffs, 1938–1957. In the case at bar, while a substantial amount of time was spent by plaintiffs' counsel, much of it was necessitated by counsel's unfamiliarity with the field. Considering, as we must, the amount of work necessary, the amount of work done, the skill employed, the monetary amount involved and the result achieved, we feel that $10,000 is more than a liberal allowance and order the amount of attorney's fees reduced to $5,-000.

The judgment is ordered modified in accordance with this opinion and as modified is affirmed. Costs, including attorney's fees of $250, to plaintiffs on this appeal.