Alexandre **BREFFORT** and Societe De Participations Theatrales, Plaintiffs,

v.

The **I HAD A BALL COMPANY**, Joseph Kipness, Jerome Chodorov, Jack Lawrence and Stan Freeman, Defendants.

No. 65 Civ. 458.

United States District Court
S. D. New York.

July 24, 1967.

See also D.C., 240 F.Supp. 1018.

Cowan, Liebowitz & Latman, New York City, for plaintiffs.

Linden & Deutsch, New York City, for defendants.

MANSFIELD, District Judge.

This action for infringement of plaintiffs' copyright in a musical play entitled "Impasse de la Fidelite" ("Impasse" herein) was tried for six days to a jury, which returned a verdict in the sum of $19,000 damages against defendants Chodorov and Kipness, the author and producer, respectively, of the infringing musical play "I Had a Ball," a verdict for $14,000 profits against Chodorov, and a verdict in favor of defendants The I Had a Ball Company, Lawrence, and Freeman, the latter two being the writers of the songs and lyrics for "I Had a Ball."

Plaintiffs now move for (1) permanent injunctive relief, and (2) reasonable attorneys fees, pursuant to Title 17 U.S. C. § 116. The prevailing defendants, on the other hand, move for an award to them of attorneys' fees under the same section and for reasonable expenses pursuant to Rule 37(c), F.R.Civ.P., because of the plaintiffs' alleged denial of facts requested under Rule 36, F.R.Civ.P., to be admitted.

*Plaintiffs' Application for Injunctive Relief*

At the outset of trial it was stipulated between the parties that the record of the jury trial would be accepted as the basis for determination of equitable relief. That record, coupled with the jury's verdict, convinces the Court that in accordance with Title 17 U.S.C. § 101 a permanent injunction should issue restraining the defendants Chodorov and Kipness from further infringing plaintiffs' copyright in "Impasse," including a restraint against further performance of "I Had a Ball," at least as long as it remains substantially in its present form, which infringes plaintiffs' copyrighted work. The injunction should not, however, extend to the independent rendition of music or lyrics of "I Had a Ball," or preclude their being per-

**626**

formed or used other than as an integral part of the musical play "I Had a Ball."

The jury's verdict against Chodorov and Kipness, in the light of the Court's instructions and the record before it, implicitly represents a finding, which the Court adopts and independently makes, that the plaintiff Alexandre Breffort was the author and co-owner with the plaintiff Societe de Participations Theatrales of a valid United States copyright in "Impasse," which was infringed by these two defendants' production and performance of the musical play "I Had a Ball." The copyright protected the plaintiffs' original arrangement and expression of ideas in "Impasse," including the plaintiffs' development of the plot, of characters, of sequences of scenes and incidents, and of the interplay of characters, which possessed originality.

The jury's verdict was amply supported by substantial credible evidence. There is no question about the fact that prior to their production and performance of the infringing work Chodorov and Kipness not only had access to "Impasse" but pursuant to an agreement with Arthur Lesser, holder of an option from the plaintiffs, embarked upon doing an English adaption of it, upon which Chodorov worked for some months with the aid of Lawrence and Freeman, after Chodorov had seen Breffort's composition performed in Paris and received the text from him. After this extensive access Chodorov, again with the aid of Lawrence and Freeman, wrote the infringing work which was produced by Kipness and performed on Broadway, in Detroit, and in Philadelphia. Both musical plays were read *in toto* to the Court and jury and were the subject of extensive testimony by the defendants and experts offered by both sides.

Viewing the proof as a whole, and independently determining the weight and credibility to be extended to the testimony, the Court finds that to the ordinary observer there appears to be a substantial similarity of expression in material portions of both works, and that "I Had a Ball" infringes copyrightable material in "Impasse." Although a finding of irreparable injury may not be essential to the issuance of injunctive relief, see Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 173 F.Supp. 292 (S.D. N.Y.1959), affd., 274 F.2d 487 (2d Cir. 1960); Rushton v. Vitale, 218 F.2d 434 (2d Cir. 1955), the proof here leads me to conclude that it would be difficult to measure the damages that might flow from any future infringement of plaintiffs' play, which had substantial value before it was infringed by Chodorov and Kipness.

Defendants oppose injunctive relief, arguing that it is not warranted for the reasons that although plaintiffs asserted their claim of infringement in November 1964, at the commencement of the six-month Broadway run of "I Had a Ball," and commenced suit shortly thereafter, plaintiffs did not press their claim for injunctive relief until trial in 1967, two years later; that there is no real probability or threat of continuing or additional infringements, since the defendants' production and performance of the infringing work was not a financial success; and that the 16 songs and lyrics written by the defendants Lawrence and Freeman, which are incorporated into the play, were not found to infringe the songs and lyrics of "Impasse." On the other hand, the record shows that it was not until approximately two years after abandonment of their work on an English adaption of plaintiffs' play that Chodorov and Kipness apparently resurrected plaintiffs' arrangement and dressed it in a modified suit of clothes to produce the infringement.

Against this background, and the existence of proof providing ample grounds for the inference that the infringement represented calculated and deliberate conduct, as distinguished from an unwitting or negligent misuse, the plaintiffs should not be required to assume the risk that these two defendants will not repeat such infringement or engage in similar conduct in the future.

See Peter Pan Fabrics, Inc. v. Martin Weiner Corp., supra. In addition to protecting the plaintiffs against such risk, the issuance of a permanent injunction does not threaten any substantial harm to any legitimate interests of the defendants, particularly since it will not bar independent performance of the songs and lyrics involved.

*Plaintiffs' Application for Award of Attorneys' Fees*

Section 116 of the Copyright Statute (Title 17 U.S.C. § 116) authorizes the Court in the exercise of its discretion to award "to the prevailing party a reasonable attorney's fee as part of the costs". It represents a departure from the normal practice of not permitting assessment of attorneys' fees as costs, which is designed to insure the availability of our courts to all alike by not rendering them prohibitive to the poor through imposition of heavy costs. For this reason an award of counsel fees is considered in the nature of a penalty which the Court has the discretionary power to impose on the losing party, see Rose v. Bourne, Inc., 176 F.Supp. 605 (S.D.N.Y.), affd., 279 F.2d 79 (2d Cir.), cert. denied, 364 U.S. 880, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960), and the statute has been "sparingly used and the amounts awarded modest". Orgel v. Clark Boardman Co., 301 F.2d 119, 2 A.L.R.3d 1203 (2d Cir.), cert. denied, 371 U.S. 817, 83 S.Ct. 31, 9 L.Ed.2d 58 (1962). Accordingly the considerations prompting an award of fees to a successful plaintiff must of necessity differ from those determining whether a prevailing defendant is entitled to such an award. See Davis v. E. I. DuPont de Nemours & Co., 257 F.Supp. 729 (S.D.N.Y.1966, per Feinberg, J.). The purpose of an award of counsel fees to a plaintiff is to deter copyright infringement. See Nom Music, Inc. v. Kaslin, 227 F.Supp. 922, 928 (S.D.N.Y.1964), affd., 343 F.2d 198 (2d Cir. 1965). In the case of a prevailing defendant, however, prevention of infringement is obviously not a factor; and if an award is to be made at all, it represents a penalty imposed upon the plaintiff for institution of a baseless, frivolous, or unreasonable suit, or one instituted in bad faith. Edward B. Marks Music Corp. v. Continental Record Corp., 222 F.2d 488 (2d Cir.), cert. denied, 350 U.S. 861, 76 S.Ct. 101, 100 L.Ed. 764 (1955); Cloth v. Hyman, 146 F.Supp. 185 (S.D.N.Y.1956); Barton Candy Corp. v Tell Chocolate Novelties Corp., 178 F.Supp. 577 (E.D.N.Y.1959); Davis v. E. I. DuPont de Nemours & Co., supra.

In the present case an award of a reasonable attorney's fee to the plaintiffs as part of the costs to be assessed against the defendants Chodorov and Kipness is both appropriate and in keeping with the purpose of 17 U.S.C. § 116. The infringement represented deliberate conduct on their part, undertaken with knowledge of the plaintiffs' copyright in the musical play "Impasse," after it had been entrusted to them for the very purpose of developing an English adaption capable of being performed on the United States stage.

The factors to be considered in determining the amount of the attorney's fee to be awarded to plaintiffs are well established. See Cloth v. Hyman, supra; In re Osofsky, 50 F.2d 925 (S.D.N.Y.1931). The subject matter and legal questions in the present case were complicated. Successful prosecution of the suit by the plaintiffs required from the outset specialized legal skill of a superior order which is possessed by plaintiffs' attorneys, who are specialists in the field of copyright and trademark practice. Counsel were required, among other things, to view the play in Philadelphia, to read numerous drafts of both works, to consult at length with co-counsel and plaintiffs' French attorneys, to conduct extensive pretrial discovery (including argument of motions and the taking of depositions), to research difficult questions of law and fact, to consult with expert witnesses, to prepare and submit trial memoranda and requests to charge, to conduct a jury trial which extended over a period of six days, to prepare briefs and affidavits for argument of

post-trial motions, and generally to supervise the handling of a demanding piece of litigation. All this work involved expenditure of 475 hours on the part of plaintiffs' counsel, most of it by the partner in charge of the case.

After taking into consideration all of these factors, together with the fact that plaintiffs prevailed and were awarded verdicts in the amounts indicated above, the Court finds that an attorney's fee in the sum of $12,500 is reasonable and directs that the said sum be awarded as additional costs against the defendants Chodorov and Kipness in the following proportions: $9,000 to be assessed against the defendant Chodorov and $3,500 to be assessed against the defendant Kipness. This allocation takes into consideration the fact that Chodorov, as the author of the non-lyrical text of "I Had a Ball," was the principal infringer.

*Application of Defendants The I Had a Ball Company, Lawrence and Freeman for Attorneys' Fees Pursuant to Title 17 U.S.C. § 116*

The application of the above-named defendants for an award of a reasonable attorney's fee to them as prevailing defendants is denied. Plaintiffs' claim against them does not fall in the category of actions instituted unreasonably, capriciously or in bad faith, which are to be discouraged through assessment of attorneys' fees as a penalty. Far from being groundless, the claim was supported by evidence warranting its submission to the jury, at least as the basis for an inference of contributory infringement. There was proof that Lawrence and Freeman had worked with Chodorov in 1961 and 1962 in his preparation of the English adaption of "Impasse"; and that a little more than one year later they performed similar services in Chodorov's writing of "I Had a Ball." Although they testified that their assistance was limited to writing songs and lyrics, none of which infringed the songs and lyrics of "Impasse," there was testimony by Freeman that he had been furnished by Chodorov with an outline of "Impasse" and by Lawrence that he may have given Chodorov suggestions as to the script. Chodorov testified by deposition that after their work on the adaption of "Impasse" Lawrence and Freeman "kicked around" and discussed with him ideas for "I Had a Ball" and "what direction it should take," suggesting "facets of a character," with their collaboration merging and melding. Furthermore plaintiffs contended that some of the lyrics were substantially similar to non-lyrical material found in "Impasse."

Thus an issue of fact arose as to whether Lawrence and Freeman participated in the creation of any of the infringing material found in "I Had a Ball," and this issue was sufficiently meritorious to warrant its being submitted to the jury. Against this background an award of attorneys' fees to them under Title 17 U.S.C. § 116 will not be made since the effect of such a penalty would be to inhibit the submission of legitimate issues for resolution by the Court. The situation here is quite different from that found in decisions cited by Lawrence and Freeman, where awards of attorneys' fees were granted against plaintiffs who had instituted groundless suits. In Burnett v. Lambino, 206 F.Supp. 517 (S.D.N.Y.1962), for instance, the court found that "the asserted claim of infringement was so demonstrably lacking in merit that bringing it was clearly unreasonable". To the same general effect is Mailer v. RKO Teleradio Pictures, Inc., 332 F.2d 747 (2d Cir. 1964), where plaintiffs' claim was found to be "unreasonable"; Cloth v. Hyman, supra, where the claim was found to have been commenced in bad faith and lacking any merit. Rose v. Bourne, Inc., supra, also heavily relied upon by the defendants, presented an unusual situation, clearly distinguishable from that here. In that case the plaintiff voluntarily dismissed his claim, the presentation of which was found by the court to be frivolous after attention was called to a dispositive Supreme Court decision, whereupon the defendants successfully prosecuted a counterclaim for a declaratory judgment;

and since the defendants in effect became plaintiffs, the court awarded them attorneys' fees. The facts warranting assessment of attorneys' fees in favor of the defendants in the foregoing cases do not exist here.

*Motion of Defendants Lawrence and Freeman for Reasonable Expenses Pursuant to Rule 37(c), F.R.Civ.P.*

■ Acting under Rule 36, F.R.Civ. P., counsel for Lawrence and Freeman, during the pretrial discovery phases of the lawsuit, served the following requests for admission upon the plaintiffs:

"1. The musical score of defendants' production of 'I HAD A BALL' was not copied or derived from the musical score of any version of 'IMPASSE DE LA FIDELITE' and does not in any way infringe upon or violate the copyright or any other rights of plaintiffs in the musical score of 'IMPASSE DE LA FIDELITE'.

"2. The songs and the lyrics of the songs in defendants' production of 'I HAD A BALL' were not copied or derived from any of the songs and lyrics of songs of any version of 'IMPASSE DE LA FIDELITE' and do not in any way infringe or violate the copyright or any other rights of plaintiffs in the songs and lyrics of 'IMPASSE DE LA FIDELITE'."

Upon plaintiffs' motion objecting to the requests, Judge Tenney upheld the requests to the extent of requiring plaintiffs to answer "whether the songs and lyrics of defendants' work were not copied from plaintiffs' work", but held that the plaintiffs should not be required to answer that portion of the requests calling upon them "to admit that defendants' work does not infringe upon theirs, as that request appears to call for a mixture of opinion and conclusion of law

and is improper" (S.D.N.Y. April 19, 1965).

Thereupon plaintiffs denied the truth of the matter set forth in the foregoing requests as so modified. The trial record discloses that plaintiffs' denials were justified. At trial Lawrence and Freeman both testified that in writing the song "Think Beautiful" for "I Had a Ball" they had "inadvertently" used 16 bars of music identical to those found in the song "Pas de Raison" in "Impasse," and they conceded that an additional 16 bars were very similar.* It further appears that the denials were asserted in good faith by plaintiffs' counsel, since he expressed a willingness to enter into a stipulation setting forth the facts and issues in more detail, but this procedure was apparently not found acceptable to defendants' counsel.

In any event the amount of time and effort required to prove that except for the small amount of music referred to above there was no copying of the music and lyrics of "Impasse," would be minimal, in view of the obvious dissimilarity between the music in both plays. Although a substantially greater amount of time and services were required to prepare Lawrence and Freeman with respect to the question of whether they were contributory infringers, their preparation and presentation of proof on this latter issue could not have been avoided through requests for admission, short of a voluntary dismissal of plaintiffs' suit against them. For the reasons indicated above plaintiffs were not unreasonable in pressing the issue of contributory infringement and the evidence warranted submission of it to the jury. Accordingly, the motion of the defendants Lawrence and Freeman for reasonable expenses pursuant to Rule 37(c), F.R.Civ.P., is denied.

Submit order.

---

* The requests for admission also asked plaintiffs to admit that the songs and music of "I Had a Ball" were not copied or derived from the musical score of "any version" of "Impasse." Literally this statement was incorrect for the reason that at trial defendants conceded that certain songs appearing in "I Had a Ball" were derived or taken from songs written by Lawrence and Freeman for the English adaption of "Impasse." However, defendants were undoubtedly referring to the copyrighted version of "Impasse" in their request, although they did not so state.