Terrence **BURNS**, M.D. and
John Zoll, Plaintiffs,

v.

**IMAGINE FILMS ENTERTAINMENT,
INC., MCA, Inc. and Universal City
Studios, Inc., Defendants.**

No. 92–CV–243S.

United States District Court,
W.D. New York.

Feb. 16, 1996.

**590**

Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, New York (Jeremiah J. McCarthy, Paul B. Zuydhoek, and David S. Teske, of counsel), for plaintiffs.

Jaeckle, Fleischmann & Mugel, Buffalo, New York (Linda H. Joseph and Jennifer M. Demert, of counsel), for defendants.

### DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This matter was referred to the undersigned by the Honorable William M. Skretny on July 15, 1992 for determination of any non-dispositive motions. The matter is presently before the court on Plaintiffs' motion to compel discovery, filed June 23, 1995.

### *BACKGROUND and FACTS*

Plaintiffs, Terrence Burns, M.D. and John Zoll, commenced this copyright infringement action on April 8, 1992. Plaintiffs, both firefighters, claim that they collaborated on two screenplays about firefighters which they sent to Anthony Yerkovich, a screenwriter located in Santa Monica, California. Plaintiffs contend that, thereafter, the movie *Backdraft*, a film about firefighters, was released in 1991 by Defendants Imagine Films Entertainment ("Imagine Films"), MCA, Inc. ("MCA"), and Universal City Studios ("Universal"), and that the screenplay for *Backdraft* used significant portions of Plaintiffs' original screenplays, "Down to Gehenna" and "Baptism of Fire," both of which were copyrighted works.

Familiarity with the procedural background of the case is assumed. On March 9, 1995, Plaintiffs served their Second Set of Interrogatories to All Defendants and their Fourth Request for Production of Documents on Defendants ("Discovery Request"). The Discovery Request was directed at identifying financial information concerning Defendants' indirect profits attributable to the infringement of Plaintiffs' screenplays through Universal Studios Hollywood Theme Park ("Theme Park") and its Backdraft Attraction, a simulation of the final warehouse

fire from the motion picture *Backdraft.* Specifically, Interrogatory No. 1 requests information regarding the expenses disbursed in the design, construction, operation and maintenance of the Backdraft Attraction, Interrogatory No. 2 requests a count of the number of persons who attended the Theme Park and the Backdraft Attraction on a monthly basis from the time the Backdraft Attraction opened, Interrogatory Nos. 3 and 4 request sales figures and expenses attributable to *Backdraft* and Backdraft Attraction souvenirs both before and after the opening of the Backdraft Attraction, Interrogatory Nos. 5 and 6 request a list of separate charges to enter the Backdraft Attraction, if any, and any dates during which each separate charge was in effect, Interrogatory No. 7 requests the general admission fees to enter the Theme Park, subsequent to the opening of the Backdraft Attraction, and the dates on which each set of general admission fees was in effect, Interrogatory No. 8 requests that Defendants identify each document utilized to respond to Interrogatory Nos. 1 through 7, and Document Request No. 1 asks for production of each document identified in Interrogatory No. 8.

On April 7, 1995, Defendants responded to the Discovery Request by objecting to each request on the grounds that such requests seek irrelevant information not reasonably calculated to lead to the discovery of admissible evidence and impermissibly seek to expand Plaintiffs' profit claims to include profits from a work that does not itself infringe any rights in any work upon which Plaintiffs base their claims in this lawsuit. Defendants also assert that the Discovery Requests were indefinite as to their time frame, overly broad, vague, and burdensome, and that some requests might be protected from disclosure under the attorney-client privilege and the work product doctrine. Additionally, on July 19, 1995, Defendants provided Amended Responses and Objections to Plaintiffs' Discovery Requests which stated that the agreements Plaintiffs entered in connection with their screenplays ("Submission Agreements") contained liquidated damages provisions limiting any damages to $27,000 per screenplay, and therefore, any and all of Defendants' financial information and documents are irrelevant to this lawsuit.

On June 23, 1995, Plaintiffs filed a motion to compel complete responses to the Discovery Request accompanied by a supporting memorandum of law. A supplemental memorandum of law was filed in support of Plaintiffs' motion to compel on September 5, 1995. Defendants responded on November 15, 1995, and Plaintiffs' filed a reply on December 7, 1995. No oral argument was held on this matter.

For the reasons discussed, Plaintiffs' motion to compel is GRANTED.

### DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Information is relevant so long as it is reasonably calculated to lead to the discovery of admissible evidence. *Daval Steel Products v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir.1991). It is not grounds for an objection that the information sought will be inadmissible at trial so long as the material requested could lead to other information that may be relevant to the subject matter of the action. *Daval Steel Products, supra,* at 1367.

In this case, Plaintiffs seek information regarding and documents relating to indirect profits which may be attributable to the success of *Backdraft,* generated by the Backdraft Attraction at the Theme Park. Defendants objected to providing the information sought by Plaintiffs as the Discovery Requests were irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, indefinite as to their time frame, overly broad, vague, unduly burdensome, protected from disclosure under the attorney-client privilege and the work product doctrine, and, based on the Submission Agreements, irrelevant.

Copyright law provides that a copyright owner is entitled to recover "any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). Profits attributable to the infringement "could in-

clude even those [profits] attributable only indirectly." 3 Nimmer on Copyright, ¶ 14.03[A] at p. 14–32.

Although the Backdraft Attraction itself contains no infringing materials, Plaintiffs' Memorandum of Law, filed June 23, 1995, p. 4, the attraction would not exist but for the success of the motion picture *Backdraft.* As public association of *Backdraft* with the Backdraft Attraction promoted or elevated the public's interest in the Backdraft Attraction, some profits of the Backdraft Attraction may be indirectly attributable to any infringement of the Plaintiffs' screenplays, and the information requested in the Discovery Request may be relevant in calculating the damages for any infringement. *See Business Trends Analysts, Inc. v. The Freedonia Group,* 887 F.2d 399, 404 (2d Cir.1989) (no legal barrier to receipt of an award of profits based on enhanced goodwill and market recognition under Section 504(b) "so long as the amount of the award is based on a factual basis rather than 'undue speculation' "); *Frank Music Corp. v. Metro–Goldwyn–Mayer Inc.,* 886 F.2d 1545, 1550 (9th Cir.1989), *cert. denied,* 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990) (portion of hotel/casino's profits were awarded for copyright infringement in a musical revue performed at the hotel); *Cream Records, Inc. v. Joseph Schlitz Brewing Co.,* 754 F.2d 826, 828–29 (9th Cir.1985) (a portion of profits attributable to increased sales as the result of an infringing advertisement are appropriate damages).

Defendants assert that the Second Circuit has consistently rejected claims for indirect profits, Defendants' Memorandum of Law, November 15, 1995, pp. 8–9, and they cite *Computer Associates Int'l, Inc. v. Altai, Inc.,* 775 F.Supp. 544, 567–69 (E.D.N.Y. 1991), *aff'd in part, rev'd in part on other grounds,* 982 F.2d 693 (2d Cir.1992); *Roy Export Co. v. Columbia Broadcasting System, Inc.,* 503 F.Supp. 1137, 1156–57 (S.D.N.Y.1980), *aff'd,* 672 F.2d 1095 (2d Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74

L.Ed.2d 63 (1982); and *Orgel v. Clark Boardman Co. Ltd.,* 128 U.S.P.Q. 531, 532 (S.D.N.Y.1960), *modified and aff'd,* 301 F.2d 119 (2d Cir.), *cert. denied,* 371 U.S. 817, 83 S.Ct. 31, 9 L.Ed.2d 58 (1962), to support this proposition. However, each of these cases demonstrate that indirect profits are an appropriate source of damage award, but that such recovery was denied in each case as the evidence presented could not support a reasonable calculation of the attributable indirect profits. *Computer Associates, supra,* at 570 ("The fundamental defect in [plaintiff's] calculation of [defendant's] 'enhanced' good will is, simply, that [plaintiff] did not prove the existence of such good will"); *Roy Export, supra,* at 1157–57 (defendant's profit from the infringement of plaintiffs' copyrights could not be "actually ascertained" as the benefit resulting from defendant's presentation and the "increased audience enjoyed by the network during that time period consists of unmeasurable goodwill with its affiliates and increased stature and prestige vis a vis its competitors"); *Orgel, supra,* at 532 (increased income from defendant's law practice subsequent to the infringement of plaintiff's work, "is too remote and speculative to be susceptible of computation by a court. . . ."). Thus, although the plaintiffs in these cases properly asserted claims for indirect profits due to an infringement, they were ultimately unsuccessful in demonstrating the indirect profits attributable to the infringement. *Compare Business Trends, supra,* at 404, 407 (although the proof in the instant case is inadequate to support an award of damages including enhanced good will or market recognition, no legal barrier to such an award exists under Section 504(b) so long as the award is factually supported).

As the Plaintiffs are entitled to any profits attributable to the infringement, including any indirect profits, the information sought by Plaintiffs' Discovery Request is relevant.[1]

■ Defendants also filed objections stating that the Discovery Request is overbroad,

---

1. Additionally, Plaintiffs point out that the court previously ordered the Defendants to produce all documents or financial records addressing revenues received from the merchandising of the motion picture *Backdraft,* including all expenses or other amounts subtracted from the gross revenues to calculate net profit attributable to the motion picture *Backdraft.* Decision and Order, filed December 21, 1994.

vague and unduly burdensome. However, these objections were not sufficiently specific to allow the court to ascertain the claimed objectionable character of the Discovery Request, further, this type of general objection is not proper. As objections to interrogatories must be specific and supported by detailed explanation of why the interrogatories are objectionable. *Roesberg v. Johns–Manville Corp.*, 85 F.R.D. 292, 296–97 (E.D.Pa. 1980) (to successfully object to an interrogatory, a defendant cannot simply state that the interrogatory is overly broad, burdensome, oppressive and irrelevant, rather, the party opposing discovery must specifically demonstrate how each interrogatory was overly broad, burdensome, oppressive or irrelevant). Additionally, the fact that answering the interrogatories will require the objecting party to expend considerable time, effort and expense consulting, reviewing and analyzing "huge volumes of documents and information" is an insufficient basis to object. *Roesberg, supra,* at 296–97. Therefore, Defendants did not meet their burden under Rule 33(a) of making a specific showing of reasons why the interrogatories should not be answered or documents not produced where they merely made conclusory objections. Accordingly, these objections shall not prevent the Defendants from providing the information sought in the Discovery Request.

Defendants state that the Discovery Request is indefinite as to the time frame, and have suggested that the court imposed strict date restrictions on the discovery demands. Defendants' Memorandum of Law, filed November 15, 1995, at p. 18. However, the majority of the Discovery Requests are clear with respect to their time frame, indicating that the information requested should commence with the period when the Backdraft Attraction opened until the present, sales of souvenirs which were generated both before and after the opening of the Backdraft Attraction. Accordingly, the court will not impose any further limitation on the time frame surrounding the Discovery Request.

Defendants also raised objections to the Discovery Request indicating that each interrogatory and the document request seek irrelevant information including confidential and proprietary information. *See* Affidavit of David S. Teske, filed September 5, 1995, Exhibits A and B. However, the Defendants never indicated which documents would fall under the attorney-client privilege or work product protection, and refused to create a privilege log absent an order of this court indicating that the "information requested is relevant and not overly broad or burdensome." Defendants' Memorandum of Law, filed November 15, 1995, at p. 17. Thus, Defendants have taken the position that a privilege log is premature until the court rules on the motion to compel. *Id.*

■ The party asserting the privilege and resisting discovery has the burden of establishing the existence of the privilege. Fed.R.Civ.P. 26(b)(5); *National Union Fire Insurance Company of Pittsburgh v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D.Kan.1994). *See, e.g., Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 144 (2d Cir.), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987). Blanket assertions of privilege are insufficient to satisfy this burden. *National Union Fire, supra,* at 567. The party claiming the privilege must supply opposing counsel with sufficient information to assess the applicability of the privilege or protection, without revealing information which is privileged or protected. *First Savings Bank, F.S.B. v. First Bank System, Inc.,* 1995 WL 250394, *4 (D.Kan.1995); *Johnson v. City of Philadelphia,* 1994 WL 665718, *5 (E.D.Pa.1994).

■ Federal Rule of Civil Procedure 26(b)(5) provides that:

When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection. Fed.R.Civ.P. 26(b)(5).

Rule 26(b)(5) requires that the party asserting the privilege or protection must specifically identify each document or communication, and the type of privilege or protection being asserted, in a privilege log. *Labatt Limited v. Molson Breweries,* 1995 WL 23603, *1 (S.D.N.Y.1995).

■ To properly demonstrate that a privilege exists, the privilege log should contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met as to that document. Fed. R.Civ.P. 26(b)(5), Advisory Committee Notes, 1993 Amendments; *see von Bulow, supra,* at 144; *Bennett v. Fieser,* 1994 WL 542089, *3 (D.Kan.1994). The summary should be specific enough to permit the court or opposing counsel to determine whether the privilege asserted applies to that document. *Bennett, supra,* at *3. Rule 26(b)(5) was intended to help reduce the need for an *in camera* examination of documents. *See* Fed.R.Civ.P. 26(b)(5) Advisory Committee Notes, 1993 Amendments. Thus, the failure to supply the relevant information may result in a denial of the privilege. *See Labatt Ltd., supra.*

■ Accordingly, where Defendants, in their answers to interrogatories, claimed that information requested and materials sought were privileged but did not state nor demonstrate the underlying facts or circumstances of the privilege or protection, Defendants have failed to fulfill their responsibility, and such privilege is denied.

Finally, Defendants argue that "although a defendant's profits are normally relevant in a copyright action, defendants' profits are completely irrelevant in this action given the liquidated damages provision[s] [in the Submission Agreements]." Defendants' Memorandum of Law in Opposition to Motion to Compel, filed November 15, 1995, p. 3. Regardless of whether or not the Defendants' objections to the Discovery Request based on the Submission Agreements were timely, this court has determined, in the accompanying Decision and Order denying Defendants' motion to amend their Answers, that these agreements do not apply to the current situation. Thus, as it has been decided that the measure of damages in this action is not controlled by the Submission Agreements, the existence of the Submission Agreements does not render the discovery of the materials requested by Plaintiffs irrelevant.

### CONCLUSION

Based on the foregoing discussion, Plaintiffs' motion to compel is GRANTED.

SO ORDERED.