**WARNER BROS. INC., Plaintiff,**

v.

**DAE RIM TRADING, INC., and Yun Yon Cho, Defendants.**

**No. 84 Civ. 4675 (IBW).**

United States District Court,
S.D. New York.

July 21, 1988.

Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for plaintiff; J. Joseph Bainton, of counsel.

Curtis, Morris & Safford, P.C., New York City, for defendants; Pasquale A. Razzano, of counsel.

## MEMORANDUM OPINION ON AMOUNT OF "A REASONABLE ATTORNEY'S FEE" AND OF COSTS

WYATT, District Judge.

This is the determination of the amount to be awarded under 17 U.S.C. § 505 as "a reasonable attorney's fee" to the two defendants in this copyright infringement action.

The opinion and decision in this action were filed on January 26, 1988, and have been reported at 677 F.Supp. 740. This is one of ten separate but related actions which were tried jointly before me without a jury; they were tried jointly because they involved "a common question of law or fact" (Fed.R.Civ.P. 42(a)). In all ten related actions, the plaintiff was the same; the defendants in each action were different.

### 1.

In eight of the ten related actions jointly tried before me, the defendants were represented by Curtis, Morris & Safford, ("CMS"; Pasquale A. Razzano, Esq., of counsel) and by James Killerlane, Esq. The file numbers of these eight actions and the defendants therein were as follows:

84 Civ. 4675 Dae Rim Trading, Inc. and Yun Yon Cho

84 Civ. 4676 C.H. Trade and Dong Sun Lee

84 Civ. 4679 Jim Trading Corp. and Jim Lee

84 Civ. 4680 The Komax General Corp. and Dong Wook Lee

84 Civ. 4684 Sun Soon Kim, and Bethel Enterprises, Co.

84 Civ. 4685 Samba Trading Corp. d/b/a Samba Jewelry Corp. and Jong J. Kim

84 Civ. 4687 Young Man General Merchandise Co. and John Chang

84 Civ. 4688 Yu Il International Trading Corp. d/b/a Yuil International Trading Corp. and Hwan–Chul Kim

In one of the ten related actions, the defendants were represented by Morgan & Finnegan (James Gould, Esq., of counsel). The file number and defendants in this action were as follows:

84 Civ. 4678 Hope Industries, Inc. and Theodore Ang.

In one of the ten related actions, the defendants were represented by Argiriou & Finkel (Alan Finkel, Esq., of counsel). The file number and defendants in this action were as follows:

84 Civ. 4686 Top Line and Sheng Wang.

The plaintiff in each of the ten related actions was Warner Bros. Inc., which was represented in each action by Reboul, MacMurray, Hewitt, Maynard & Kristol (J. Joseph Bainton and William Dunnegan, Esqs., of counsel).

### 2.

While the decision in this one action (that with the lowest file number) has been filed, there has been no decision in the other nine related actions.

In this action, no judgment has yet been filed and entered because the amount of attorneys' fees (and also the amount of costs) must be determined. It is therefore

my purpose to determine the amount of costs to be allowed and the amount of a reasonable attorney's fee to be awarded to defendants here and then to file a judgment to be entered herein. The plaintiff intends to make post-judgment motions and, if these should be denied, to appeal to the Court of Appeals.

In the nine related actions, it is my purpose to postpone decision until there has been a decision in this action by the Court of Appeals, so that the views of the Court of Appeals may be reflected in my disposition of the other actions.

### 3.

The questions of the form of judgment and the amounts of costs and of "a reasonable attorney's fee" in this action to defendants were considered at a conference with counsel on February 19, 1988, to which conference counsel in all ten related actions were invited.

There was agreement on the *form* of judgment to be entered in this action.

It appeared that agreement could be reached on the amount of costs to defendants in this action.

It appeared that no agreement could be reached on the amount of "a reasonable attorney's fee" to defendants in this action. The reasons for this are not easy to describe in any detail, partly because (according to my recollection and reconstruction) there are reporting errors in the transcript, due, in part at least, to the haste and number of the competing speakers. It may be useful, therefore, to describe the principal point of disagreement, if only for background.

As explained on February 19 by counsel for defendants, as I understood it, Curtis, Morris & Safford and Killerlane represented the defendants in eight of the ten related actions and lumped together on their books the time charges in the eight actions. According to Mr. Razzano, the defendants in these eight actions "have shared equally in the payment of [the] bills and in the obligations to pay any bills that have not yet been paid" (Tr. 5; "Tr." references in

this section are to pages of the February 19, 1988, transcript).

Razzano (for defendants) stated (Tr. 8, 25–26) that if it were not necessary to litigate the issue of the amount of the counsel fee to defendants in this action, their counsel would not ask for any fee for *any* services prior to February 20, 1985 (on that date, defendants conceded that they had infringed the "Gizmo" copyright and in my filed opinion no costs nor attorney's fee were allowed or awarded for defending that copyright before February 20, 1985 (677 F.Supp. at 746), although, as will later be seen, costs and an attorney's fee were allowed and awarded for defending the "Stripe" copyright before February 20, 1985). The total of the time charges of counsel for defendants in all eight actions on that basis was said to be $40,067.46 (Tr. 26) and Razzano proposed that this be divided into eight parts and "approximately $5,000 rounded off" (Tr. 26) be awarded in this action. This was not acceptable to Mr. Bainton (for Warner) who stated that this was equivalent to asking him to consent to $40,000 as a reasonable fee to defendants in the eight cases and "I will not consent to $40,000 as a reasonable fee" (Tr. 28).

A compromise was then explored. It seems that counsel for Warner had in court a copy of what had been marked Defendants' Exhibits A, B, and C for identification, which he described as "time records and bills" of counsel to defendants and which were represented by such counsel to be "accurate" (Tr. 18). At one point these papers were handed up to the Court (Tr. 18) but were not examined. It seemed that counsel for Warner would agree to $5,000 as the attorney's fee to defendants in this action "if I can get those things [Defendant's Exhibits A, B, and C for identification] in evidence on that basis" (Tr. 30); counsel further stated; "... it's imperative from our perspective that Defendant's A, B and C [for identification] be received in evidence." (Tr. 31), apparently forthwith. Upon questioning by me of counsel for Warner, it developed that the necessity for Warner to have these records in evidence was *not* "to support an argument in the Court of Appeals that the $5,000 is too

much ..." (Tr. 32) but rather "to support an argument that the conduct of Warner was neither frivolous, oppressive nor vexatious" (Tr. 32).

Counsel for defendants did not agree that their time records etc. were admissible at that stage for such purpose, contending that Warner was "in essence" asking for "a reopening [of] the trial putting in new evidence on an issue that has already been tried" (Tr. 32). I accepted this contention, stating (Tr. 33): "But when I made the findings and conclusions that I did make, I didn't have these documents [Defendant's Exhibits A, B, and C for identification] before me" (Tr. 33).

The Court then determined that the resolution of the amount of "a reasonable attorney's fee" could only be done by trying the issue (Tr. 33). Apparently, Defendant's Exhibits A, B, and C were handed back to counsel for Warner, not having been examined by the Court (Tr. 42, lines 2, 3).

### 4.

The issue of "a reasonable attorney's fee" was tried on March 21, 1988.

As a preliminary matter, the parties agreed (by counsel) that costs to defendants should be in the amount of $750 (Tr. 9, 10; "Tr." references in this section and succeeding sections (unless otherwise indicated) are to pages of the transcript for March 21, 1988). The figure of $750 will be included for costs to defendants in the judgment to be entered herein. The agreement of counsel for plaintiff to the amount does not affect the position taken for plaintiff that no costs nor attorney's fee should be allowed or awarded to defendants.

### 5.

Before going into the evidence as to the time spent by counsel for defendants and the amounts disbursed by them for necessary expenses, some background should be given.

Mr. Killerlane is a member of the New York bar and of the bar of this Court. He has been in the general practice of law for a number of years with a law firm in White Plains but he also has had a private personal practice there and in New York City, principally personal injury litigation, real estate, and small business representation (Tr. 87, 88). Mr. Cho of Dae Rim first approached Killerlane to represent him in this action and eventually Cho put together the group of eight defendants, each separately sued by Warner; the eight asked Killerlane to represent them (Tr. 96, 97); Killerlane had previously done work for one of the group in a real estate matter (the name was not given but it seems likely that it was Dae Rim) (Tr. 88). Killerlane accepted the representation as part of his personal private law practice (Tr. 88), as distinguished from that of the firm in White Plains. The group of defendants naturally wanted the actions against them to be disposed of expeditiously and inexpensively (Tr. 114). Killerlane soon realized that this could not be done and in October 1984 retained Razzano and his firm (CMS) because of their expertise in the copyright field (Tr. 62, 114). Killerlane had known Razzano before and had known his professional reputation and that of his firm (Tr. 114).

The CMS firm and Razzano specialize in the field known as Intellectual Property Law, which includes copyright. They have many years of trial experience (Razzano has eighteen) in copyright matters, for both plaintiffs and defendants. Razzano has lectured before professional associations and law schools; he has written for professional journals and contributed to books on copyrights; he has been an officer and director of professional copyright associations. I am satisfied that the CMS firm and Razzano have a very high and deserved reputation in the copyright field.

Killerlane has had most of the direct contacts with the individual defendants in the eight actions and with those acting for the corporate defendants. The part played by Killerlane in the defense of the eight related actions in which he appeared was more significant than that of a mere intermediary between the clients and the copyright specialist law firm. The individual defendants and all those interested in the corporate defendants are Koreans. There are cultural, language, and experience dif-

ferences which necessitate patient and frequent contacts with the clients for explanations, preparations, and decisions. These contacts were primarily made by Killerlane.

Killerlane is considered by CMS, and is treated by CMS, as the client (Tr. 24). Bills covering professional services of CMS in all eight actions have been addressed to Killerlane as the client (Ex. DDD). The total of these bills is $31,107.46. Killerlane has paid to CMS to date $12,673.70 (Ex. EEE-1, fourth to last page).

Killerlane, according to his testimony (Tr. 123–126), sent two bills to the defendants in each of the eight actions. The first bill was "in the beginning of the year 1985" (Tr. 124) when he was "getting a retainer, an amount of money so ... as against the expenses and the legal expenses that would be incurred in the action." (Tr. 125). The second bill was sent "Prior to trial, prior to October 1986" (Tr. 125). While this is somewhat inexact, my impression is that the second bill was sent in contemplation of increased services at the trial and was sent shortly before the start of the trial in October 1986. The two bills were paid by the clients in the eight actions to Killerlane (Tr. 123). The bills were not produced and Killerlane could not remember their exact total. The first bill was "approximately $500, I think ... It was a smaller bill followed up with a larger bill and the aggregate of the two bills was approximately 2,500 3,000 to the defendants" (Tr. 125). From the evidence, it will be assumed for present purposes that each defendant was billed by Killerlane a median $2,750, or a total for the eight actions of $22,000, and each defendant has paid $2,750 to Killerlane, or a total for the eight actions of $22,000. The clients in the eight actions are obligated to pay the amounts of the bills of CMS (Ex. DDD; Tr. 126) but such bills have not been shown to them (Tr. 126).

There is no evidence that the bills sent by CMS to Killerlane and by Killerlane to the defendants in the eight actions were in full for all services to the date of the bills. On the contrary, it seems clear from the circumstances that they were on account of services, to be credited against the final fee when determined at the conclusion of each action.

### 6.

As a further preliminary, it should be noted that there are some important matters of fact which are not in dispute here.

At the hearing on the amount for counsel fees, there was no contention for Warner that the hours claimed to have been spent by CMS and Killerlane were not spent nor that their hourly charges were not reasonable.

Counsel for Warner stated (Tr. 46, 47):

It is my understanding that Mr. Razzano is seeking recovery for the time he spent based upon the usual hourly billing rate from time to time and was in effect in his firm and Mr. Killerlane is seeking recovery for $100 an hour which remain[ed] unchanged during the lawsuit.

If those understandings are correct, I object to this on the ground it is irrelevant. I stipulated [or "stipulate"?; the effect is the same] to the reasonableness of those two numbers.

Earlier, counsel for Warner had stated, with reference to Razzano and his firm that "I want Mr. Razzano's bills and contemporaneously kept time records received in evidence. We stipulate to the reasonableness of his hourly charges ..." (Tr. 12). And again (Tr. 30): "I will stipulate as to the reasonableness of the increases also."

After the taking of evidence as to counsel fees was concluded, I summarized the situation in this aspect as follows (Tr. 131):

... my impression is that during our hearing today there isn't any issue of fact made between the parties as to the amount of time spent or the reasonableness of the hourly rates proposed, but there is a contention....

No exception to my summary was made by counsel for Warner or by any other counsel.

That it was conceded at the hearing on fees of March 21, 1988, that the hours spent by Razzano and his firm and by Killerlane were as claimed by them and

that their hourly charges as claimed were reasonable, is confirmed by the fact that in the "Memorandum of Plaintiff in Opposition etc.," submitted after the hearing, no issue is raised as to those two matters.

### 7.

The Copyright Act (17 U.S.C. § 505) provides that "the court in its discretion may allow the recovery of full costs ... [and] a reasonable attorney's fee to the prevailing party." The necessary determination has been made by this Court that defendants were the prevailing parties since they prevailed on the significant issues in the litigation (677 F.Supp. at 770–774; see *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) and *Gingras v. Lloyd*, 740 F.2d 210 (2d Cir.1984) (Section 1988 of the Civil Rights Law)) and that the unreasonable conduct of the plaintiff in this case warranted an award of attorneys' fees to defendants (677 F.Supp. at 771–773). See *Diamond v. American Law Pub. Corp.*, 745 F.2d 142 (2d Cir.1984); see also *Mailer v. R.K.O. Teleradio Pictures, Inc.*, 332 F.2d 747 (2d Cir.1964) and *Grosset & Dunlap v. Gulf & Western Corp.*, 534 F.Supp. 606 (S.D.N.Y.1982).

Basic to a determination of a "reasonable" fee here is the manner in which the time spent by counsel was recorded as it was spent and thereafter was billed by CMS to Killerlane and by him to the defendants in the eight actions. As directed by the Supreme Court:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.

*Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). See *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 471 (2d Cir.1974).

The time spent by CMS was recorded accurately; what was done was described in sufficient detail. There were no separate time records, however, for each separate action, for each separate set of defendants. All records were lumped together by CMS in one account, maintained at a stan-

dard normal to a good sized, capable, established law firm.

The time spent by Killerlane was recorded by him accurately; what was done was not separately described but was reflected in the pleadings, correspondence files, and other files of Killerlane. The time was recorded on one large sheet of paper, not unusual for a single practitioner.

The bills sent to date by CMS to Killerlane aggregate $31,107.46, of which $12,673.70 has been paid to CMS by Killerlane, (Exs. DDD, EEE–1, fourth from last page). As already noted, the bills sent by Killerlane to the defendants in the eight actions aggregate $22,000, of which those defendants have paid Killerlane $22,000.

Basic also to a determination of a "reasonable" fee in this specific, single action is the principle employed by applicants in attributing many of the time charges *in the eight actions* to the defendants in this *single action*. That principle is a simple one, based on sound common sense, and is succinctly expressed by applicants in their supporting Memorandum (pp. 3–4):

> In presenting their claim for attorneys fees defendants' counsel distinguished between their representation of these defendants [in Dae Rim] and those in the companion cases [the other seven actions]. In doing so counsel have attributed to these defendants the entire time and efforts which they expended that would have had to have been expended in any event whether they represented one or eight defendants, and they have eliminated any claims for fees solely related to those other defendants [those in the other seven actions] e.g. trial and brief preparation time attributable solely to other defendants in companion cases.

■ This principle is accepted by me as the only sensible solution for the peculiar problem here, where ten actions were tried together; where defendants in eight of the actions were represented by the same counsel, whose "reasonable attorney's fee" is here being determined; where only this action is being decided now; and where decision of the other actions awaits the final result on appeal in this action. I find

in reviewing the exhibits and testimony presented in support of the application for attorney's fees in this action that, had counsel represented the defendants named in this action *alone*, they would have had to expend the number of hours here claimed. Additionally, I find this number of hours to have been a reasonable amount of time spent in the defense of this action alone.

Of course, counsel are not to be later awarded fees in the other actions without taking into account the compensation which will have already been awarded in this action and the hours on which this award is based.

This was brought out in the cross examination of Razzano in the following somewhat extended passage (Tr. 59–61):

Q. ... Among the services for which you were seeking recovery in the Dae Rim case, is your attendance at trial on behalf, on certain days, on behalf of not only Dae Rim, but—seven other clients as well, is that correct?

A. That's correct.

Q. And I believe you said, sir, that you have allocated that time to Dae Rim because you would have had to have been in the courtroom even if you didn't represent the other seven defendants?

A. That's correct.

Q. And that's the basis of your allocation of this time to Dae Rim, correct?

A. That's correct.

Q. Now, sir, do you agree with me that you are entitled to be paid for those hours once and only once so that if you are paid for those hours in the Dae Rim case and the court should enter an order, similar order, in the other seven cases in which you represent parties, you would not be entitled to recover, if you will, seven additional times for those hours billed in this case?

A. You are asking if I agree with that proposition?

Q. Yes, sir.

A. I don't think that in an attorney's fee application in the other cases I would claim or assert a claim for as much as we're asking for in this case because of the very premise which you stated.

I [don't] think I would. This is somewhat speculative because I haven't really thought about it, but I think I would present the facts to the court as to what I was paid so far by Warner Brothers as a result of this litigation, present the other hours which had not been compensated for and argue to the court that in this circuit the Court of Appeals has established what's called the lodestar test, and that those hours that I hadn't been paid for might be considered the lodestar and I would probably argue to the court that the benefit the clients obtained justified an increase in the lodestar.

In the passage above quoted from the transcript, at Tr. 60 the transcript reads: "I think I would." From the context and from my own recollection, I believe the reporter omitted the important word "don't" from the answer as given. I have accordingly inserted the word "don't," in brackets to reflect the insertion.

It would seem to be a simple matter to avoid, in the seven actions other than that at bar, any later allowances for counsel fees which fail to take into consideration the allowance now to be made in this action and the hours on which it is based. All eight actions are, and presumably will continue to be, assigned to the same judge of this Court, either to me or to my successor. Moreover, the professional and personal integrity of counsel is, of course, a reassurance that full disclosure of this allowance will be made in later applications for allowances in related actions.

8.

The testimony of Razzano and the documents admitted through him show the amount claimed here for an attorney's fee.

No claim is made for any services rendered before February 20, 1985. This is explained for defendants as follows (Memorandum, p. 3; emphasis in original):

In view of the Court's ruling on attorneys fees with respect to the "Gizmo" copyright prior to February 20, 1985 defendants have elected not to claim *any* attorneys fees or costs prior to that date.

(Defendants were awarded attorney's fees with respect to the "Stripe" copyright prior to February 20, 1985 since there was never *any* evidence of an infringement of the "Stripe" copyright 677 F.Supp. at 771). Thus, the Court determination to exclude certain hours spent on issues where defendants did not ultimately prevail takes into consideration "the relationship between the amount of fee awarded and the results obtained." *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

The claim is in summary form on Exhibit III, admitted without objection (Tr. .19). The amounts claimed for services, and for disbursements of CMS, are as follows:

| | |
|---|---|
| CMS services | $28,239.75 |
| CMS disbursements | 2,433.86 |
| Killerlane services | 7,825.00 |
| | $38,498.61 |

As noted, CMS did not separate time spent or time billed between the eight actions; Killerlane was considered as their client for billing purposes. Killerlane himself billed each client on account separately, sending two bills to each. No bill has been sent by Killerlane to any client since "prior to October of 1986" (Tr. 125).

It must be determined how many hours were spent by CMS and properly attributable to the Dae Rim defendants either directly or under the principle discussed above in section 7. We must look to the testimony of Razzano and the documents admitted in evidence through him.

The documentary exhibits, admitted without objection, included copies of the following CMS internal time and expense records which reflect services performed by CMS and necessary expenses incurred in the defense of *all eight defendants.* These exhibits include a detailed description of the services performed and expenses incurred:

EEE 1—the CMS computer records covering the period from March 1985 through February 1988

EEE 2—the CMS handwritten records for March 1988

Based upon these contemporaneously kept records and utilizing the previously stated principle of attribution, Razzano prepared various summary statements of the time spent for services performed by CMS which Razzano attributed to the defense of *the Dae Rim defendants* and the charges for which aggregate the $28,239.75 item in the claim here made (as later explained, I find this total to be mathematically incorrect, but it will be used):

AAA 1—listing of CMS services by months

BBB 1—listing of CMS services by individual

CCC 1—listing of CMS services by type

Additionally, a summary of CMS disbursements was received in evidence without objection as Ex. JJJ (Tr. 58, 59).

In determining the hours spent by CMS, it is helpful to refer to Ex. BBB–1. That document describes what was done, the hour spent and by whom, what they were for, and the hourly rate applied in calculating the $28,239.75 asked for CMS services, shown as the total in Ex. BBB–1 under "Amount Billed." (This is the only "total" shown in Ex. BBB–1; there are no totals for the other CMS record figures.)

The figures shown in Ex. BBB–1, as already noted, have all been conceded by plaintiff to be reasonable, except as hereafter noted. These figures may therefore be found accurate on the record, with one reservation.

■ The plaintiff does not concede the principle of attribution by Razzano to the Dae Rim defendants of many of the hours spent by CMS in all eight actions. But having found that principle properly applicable here, for reasons already expressed, we find that the hours shown for CMS on Ex. BBB–1 as 261 are reasonable and accurate and that the total at hourly rates conceded to be reasonable is $28,239.75. (Our own calculation of this total is $28,-994.75, but, since the claim made in Ex. III is for $28,239.75 (a lower figure), in the interest of simplicity, that item of the claim is allowed as made; Razzano, whose attention was called to the error, has consented that the lower figure be allowed as made.)

The allowance of the claim to this extent is further supported by the testimony of

Razzano to the validity of the figures appearing in Ex. III (Tr. 18):

Q. And can you tell me what the document was prepared for?

A. I reviewed my firm's time and billing records and your [Killerlane's] time and billing records in an exercise to determine how much time that was expended in the defense of these various actions was attributable either directly to Dae Rim or it was time that I or you [Killerlane] would have had to spend in any event whether we represented one defendant or eight. And this summary reflects my calculations based on that premise and the numbers that appear on the exhibit based on my calculations which the other documents we will go through back up.

■ Before going to the allowance for the services of Killerlane, we should determine the claim for $2,433.86 as the out of pocket disbursements of CMS. The items making up this sum are set forth in Ex. JJJ, offered in the testimony of Razzano with this explanation (Tr. 58):

MR. KILLERLANE: I have just handed Mr. Razzano an exhibit marked for identification as JJJ. It is entitled Summary of Disbursements.

Q. Mr. Razzano, did you prepare this summary of disbursements?

A. Yes, I did. It is a summary of monies disbursed by Curtis Morris & Safford in connection with this litigation and these disbursements are also reflected on the computer records of Exhibit EEE–1. This is a summary that I prepared as a convenience so that we could see in one place the kinds of disbursements and their amounts.

Ex. JJJ was then received in evidence, without objection. The moneys shown as laid out are usual for lawyers in litigation: for example, the largest item is for process copies; others are for postage and express mail, car rental to transport exhibits to and from court, messenger service, transport to and from court, "Lexis" (a computer research tool) charges, and the like. No challenge is made to the claim that the amounts were in fact laid out. The only

opposition is that the amounts "are neither taxable as costs nor recoverable as attorneys' fees" (Memo for Plaintiff, p. 6). No authority is cited for this proposition. My belief is that it has, by a long and natural tradition, been considered that moneys laid out by a lawyer for expenses necessary in his representation of a client, are reimbursable by the client as an addition to, or as part of, the fee. For example, "expenses" are included in an award of attorneys' fees in *Craik v. Minnesota State University Board*, 738 F.2d 348, 351 (8th Cir.1984). "Lexis expenses" are included in an award of attorneys fees in *Wehr v. Burroughs Corp.*, 619 F.2d 276, 285 (3rd Cir.1980). Accordingly, I see no reason to disallow the out of pocket disbursements of CMS and they are allowed in the sum of $2,433.86. That the items making up this sum were in fact laid out has not been questioned by plaintiff.

The next item in Ex. III is for services of Killerlane. The amount is $7,825.

The total number of hours spent by Killerlane in all eight actions is shown by Ex. FFF–1. The total hours spent by him after February 20, 1985 (for which period a fee is here sought) is 90. (Defendants do not include in this exhibit any total for hours spent on the eight actions.)

The total number of hours spent by Killerlane after February 20, 1985, and attributed by him and Razzano to the Dae Rim defendants, after a review of Ex. FFF–1 and the files of Killerlane by him and Razzano, is 78¼, as shown in Ex. BBB–2. There was an initial objection to its admission (Tr. 42) and decision was reserved (Tr. 43); the exhibit was later admitted without objection (Tr. 109).

The attribution in Ex. BBB–2 of 78¼ hours of the time of Killerlane to the Dae Rim defendants was based on the time records of Killerlane (Ex. FFF–2), on the files of Killerlane, and on long conferences between Razzano and Killerlane as to the proper attribution. This is shown by the testimony of Razzano (Tr. 18) quoted at page 107 above. This is also shown in the testimony of Killerlane (Tr. 109):

Q. Is it correct that these summaries [AAA-2, BBB-2, and CCC-2] are drawn from the information that appears in exhibits FFF-1 and FFF-2?

A. Absolutely. I sent those documents to you by personal message, I believe, last Monday or possible the Friday of the week before. At which time you reviewed them, we had some telephone conversations and we then—you had typed up initial drafts of these different summaries in a form which you knew would be acceptable to the court and we then met, as I said, as you said, for almost a whole day and went over these matters.

It was immediately after this testimony that Ex. BBB-2 was received in evidence without objection (Tr. 109).

■ It must be noted that the records kept by Killerlane, while they were kept contemporaneously and accurately as to dates and hours expended, do not separately describe the nature of the work done by him. I am aware that our Court of Appeals has stated that:

all applications for attorney's fees ... should *normally* be disallowed unless accompanied by contemporaneous time records indicating for each attorney, the date, the hours expended and the nature of the work done.

*New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1154 (2d Cir.1983) (emphasis supplied). Considering that the total hours of CMS and Killerlane in all eight actions was 392¼, that their total hours attributed to the Dae Rim defendants was 339¼, that the Killerlane hours attributed to the Dae Rim defendants was 78¼, and that Killerlane and Razzano were able together to reconstruct from contemporaneously kept records a description of the hours Killerlane spent for attribution to Dae Rim, I feel that the *Carey* opinion does not require me to deny a fee for the hours spent by Killerlane and attributed by him and Razzano to the Dae Rim defendants.

The hourly rate for Killerlane, as shown before, has been conceded by plaintiff to be reasonable.

For the reasons expressed, I find that the hours shown for Killerlane on Ex. BBB-2 are accurate and reasonable and that the total at an hourly rate conceded to be reasonable is $7,825.

9.

The arguments for plaintiff in opposition to the amount asked by counsel to the Dae Rim defendants have been considered in fixing the allowances herein. Those arguments are found in the undated "Memorandum for Plaintiff ... etc.," submitted April 1, 1988, (hereafter cited as "Memo").

■ The first argument is that nothing done by counsel for the Dae Rim defendants was "necessary" except "to try the case" (Memo, pp. 1, 1–4). The time "necessary" "to try the case" is said to have been 4¾ hours (Memo, p. 4). At $130 for the time of Razzano, this is calculated to be $617.50, and this (as argued by plaintiff) is the total which should be allowed here as "a reasonable attorney's fee" (Memo, p. 4). The argument seems so extreme as to suggest that it is not meant to be taken seriously.

This first argument is based on the claim that on October 26, 1984, Warner announced that it "was ready for trial" and that defendant's counsel "should have announced that they were also ready for trial" (Memo, p. 3). This is certainly too much to expect of any defense counsel, especially where, as in this instance, defense counsel had just been retained and had not even had time to file an answer. Indeed, the reason for the October 26, 1984, conference was that it was the return date of a motion by Warner for a default judgment for failure of the Dae Rim defendants (who had not yet retained counsel) to appear, move, or answer. This motion had been made by Warner despite the fact that the Dae Rim defendants, before they were represented by counsel, had consented to a preliminary injunction and had obeyed that injunction (677 F.Supp. at 772). There was thus no reason whatever for any rush to trial.

[6] The first argument proceeds to assert as an established rule that fees "will

not be awarded ... for performing services that were not necessary to dispose of the case" (Memo, p. 2). The only citation for such a rule is (Memo, pp. 1, 2) to *Cohan v. Richmond*, 86 F.2d 680 (2d Cir.1936). That decision was in a case totally unlike that at bar. There was no trial; there was a long delayed motion to dismiss on the face of the complaint, which motion was granted for defects "which had been apparent from June 2, 1930, when it [the complaint] was filed" *Cohan*, 86 F.2d at 682; there was an allowance to defendants of counsel fees, but not including services in preparing for trial for three years because there "was no warrant for delaying the motion [to dismiss for defects on the face of the complaint] for nearly three years" *Cohan*, 86 F.2d at 682. There is no rule that a party may not be allowed counsel fees for services in making a contention which is ultimately rejected. Hours spent on such a contention may be "reasonably expended" even though, after the contention is rejected, it would appear not to have been "necessary." Such is the principle expressed in *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.... Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters. (citation omitted)

The second argument for Warner is that no award of an attorney's fee to defendants in a copyright action can be "in excess of the actual fees they were charged" (Memo, p. 4). Specifically, it is asserted that the "total cost of the action ... is approximately $50,000," that one eighth of $50,000 is $6,250, and that $6,250 "should be the maximum amount defendants should

receive" (Memo, p. 5). The second argument is in theory obviously correct in that, as quoted for plaintiff from Nimmer (Memo, p. 5):

> ... the prevailing party may not make a profit in payment of an attorneys' fee over and above the amount which the client actually paid to the attorney.

This argument, however, cannot be applied to the facts in the case at bar because the Dae Rim defendants have never been billed, nor have they ever paid, any actual fee to their lawyers in full for all services performed. As noted above at page 104 they have paid—as have the defendants in the other seven related actions—$2,750 to Killerlane; they have had no bill since prior to trial in October 1986. The defendants in all the actions have paid $22,000 to Killerlane and have had no bill since October 1986, a date long before the outcome in this Court could be known. It has already been found on the evidence that no final fee has ever been agreed upon, nor paid, between clients and counsel.

The third and final argument for plaintiff is made in a group of short, miscellaneous contentions.

It is contended that out of pocket disbursements "are neither taxable as costs nor recoverable as attorneys' fees" (Memo, p. 6). Nothing is cited to support this. As explained already, the contention is rejected.

It is contended (Memo, p. 6) that Razzano should not have "billed" 8 hours for March 21, 1988, because "he was in court for less than four hours." The internal records of CMS (Ex. EEE–2, page for March 21, 1988) show that Razzano reported 8 hours for that day as spent in "Preparation for and attending trial on quantum of attorneys fees." The transcript shows that court began at 10:15 a.m. and adjourned at approximately 3:30 p.m. There was a recess for lunch; there was time spent getting to and from the Court House; there was "preparation." There is nothing in the evidence which would justify rejecting the claim for these hours.

It is contended for plaintiff that Killerlane did not "exclude from his application the time spent for representing the defendants in the seven related actions" (Memo, p. 6). This contention appears already to have been discussed herein above at pages 108–109. Killerlane did exclude "the time [directly] spent for representing the defendants in the seven related actions." Of his total 90 hours spent in the eight actions, he and Razzano applying the principle of attribution described, attributed 78¼ hours to the Dae Rim defendants and 11¾ hours to the other defendants.

■ It is finally contended that Killerlane has included in his hours spent the time needed to investigate whether in fact a private detective hired for Warner to secure information about Dae Rim was, as he claimed, a former police officer; it turned out that he had been a police officer. But because an investigation did not succeed in one instance does not mean that the time was not reasonably spent.

### 10.

To summarize the determinations here made:

    a. costs of $750, the amount as agreed by the parties, are allowed under 17 U.S.C. § 505 to the defendants herein;

    b. an attorney's fee is awarded under 17 U.S.C. § 505 in the amount of $38,-498.61, as asked for by defendants herein and as summarized in Ex. III; and

    c. the request by defendants (Memo, p. 9) that the opinion of this Court be amended and that the Court "issue a judgment which also awards these attorneys fees under Fed.R.Civ.P. 11" is denied.

A final word may be added. It is my feeling that "a reasonable attorney's fee" could be substantially more than the $38,-498.61 being awarded here. I take note in this connection that the American Intellectual Property Law Association 1985 *Report of Economic Survey* shows that the average cost of a copyright litigation through trial in New York City was between $58,-000 and $107,000 with a median cost of $87,000.

To my own observation, counsel for defendants have been competent, skilled, and responsible. They attempted to end the action speedily and justly. Four months after the action was commenced, on November 2, 1984, within no more than a month after they were retained, counsel for defendants offered on behalf of defendants to give Warner all the principal relief sought in the action—a permanent injunction against any infringement. Warner rejected the offer and has since, for over three years, burdened the defendants and this Court with multiple actions—solely to secure money from innocent infringers (in this instance, at least) for claimed statutory damages, costs, and attorneys' fees of Warner, a company which made large profits from the Gremlins movie. Against persistent and competent lawyers, counsel for these defendants have displayed a moderate and reasonable attitude and have achieved a good result for their clients, with a reasonably modest expenditure of time.

I have allowed and awarded only what counsel have asked for, and conclude that it would not be appropriate to allow or award anything more or to reduce the "lodestar" amount which is claimed. See *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939 and *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984).

Counsel for these defendants have not asked for any fees or costs prior to February 20, 1985 (Memo, p. 3); Killerlane is not asking recovery of any disbursements he incurred (Memo, p. 9); counsel have elected "not to seek an increase in [the] lodestar amount" (Memo, p. 13), as they could have done (*Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983); "in some cases of exceptional success an enhanced award may be justified"). The restraint shown is commendable.

The determinations made herein will be reflected in the judgment to be filed and entered herein.

So Ordered.

### JUDGMENT

In accordance with this Court's opinion, with Findings of Fact, Conclusions of Law,

and Decision, filed January 21, 1988, it is hereby ORDERED, ADJUDGED, AND DECREED that:

1. defendants Dae Rim Trading, Inc. and Yun Yon Cho, their officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them who receive actual notice of this Judgment, by personal service or otherwise are permanently restrained and enjoined from:

   a) reproducing in any way the copyrighted work "Gizmo" which is the subject of Copyright Registration No. Vau 54–952 dated December 30, 1983;

   b) preparing derivative works based on such copyrighted work;

   c) distributing copies of, or derivative works based upon, such copyrighted work to the public or anyone else by sale or other transfer of ownership, or by rental, lease or lending; and

   d) infringing in any other way upon the exclusive rights of plaintiff in such copyrighted work as granted to plaintiff under the Copyright Act of 1976, 17 U.S.C. § 106;

2. defendants jointly shall pay to plaintiff, the sum of $100 as statutory damages for past infringement of the "Gizmo" Copyright Registration No. Vau 54–952;

3. to the extent that the claim of plaintiff in its complaint was based on infringement of plaintiff's "Stripe" copyright, that part of the claim is dismissed with prejudice;

4. no costs are allowed to, and no attorney's fee is awarded to, plaintiff;

5. defendants Dae Rim Trading, Inc. and Yun Yon Cho are allowed $750 for costs and are also awarded $38,498.61 as a reasonable attorney's fee against plaintiff.

The parties to this action, through their respective counsel, have agreed in open court to the form (as opposed to the substance) of the foregoing provisions of this judgment as embodying the decision of this Court in its opinion, with Findings of Fact and Conclusions of Law, filed January 21, 1988.

The Clerk is directed to enter this judgment in the civil docket of this Court.

SO ORDERED.